IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES W.,[1]                                                    Case No. 1:20-cv-00541-SB

                Plaintiff,                          **OPINION AND ORDER**

          v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      James W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §

405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to

28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.     PLAINTIFF'S APPLICATIONS

Plaintiff was born in October 1985, making him thirty-one years old on December 1, 2016, his amended alleged disability onset date. (Tr. 36, 68.) Plaintiff graduated from high school and has past relevant work experience as a security guard, tow truck driver, auto mechanic, weigher, wood working machine operator, and general mechanic. (Tr. 21, 33.) In his

applications, Plaintiff alleged disability due to paralysis of his right hand and "back problems." (Tr. 68.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on October 3, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 15, 2019. (Tr. 31-55.) On March 5, 2019, the ALJ issued a decision denying Plaintiff's applications. (Tr. 13-23.) On January 29, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-23.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2016, his amended alleged disability onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]egenerative disc disease of the cervical and lumbar spine, neuropathy, status post right shoulder dislocation with persistent mild tend[i]nosis and asthma[.]" (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 16.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can lift and carry no more than ten pounds "occasionally or frequently," (2) Plaintiff can stand, sit, and walk for no more than six hours during an eight-hour workday, (3) Plaintiff can occasionally kneel, crouch, crawl, climb ramps and stairs, push and/or pull with his right arm, reach overhead bilaterally, reach in all "other directions" with his right arm, and handle with his right arm since he is left-hand dominant, (4) Plaintiff can never climb ladders, ropes, or scaffolds, (5) Plaintiff can frequently balance, and (6) Plaintiff must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. (Tr. 16.) At step four, the ALJ concluded that Plaintiff was unable to perform his past work. (Tr. 21.) At step five, the ALJ determined that Plaintiff was not

disabled because a significant number of jobs existed in the national economy that he could perform, including work as a call out operator, telephone solicitor, and surveillance system monitor. (Tr. 22.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide clear and convincing reasons for discounting Plaintiff's symptom testimony; (2) provide legally sufficient reasons for discounting the opinion of Plaintiff's treating physician, Christian Holland, D.O. ("Dr. Holland"); (3) find at step two that Plaintiff's complex regional pain syndrome ("CRPS"), also known as reflex sympathetic dystrophy ("RSD"), was a severe impairment; (4) satisfy her step five burden of showing that significant numbers of jobs exist in the national economy that Plaintiff can perform; and (5) pose hypothetical questions to the VE that accounted for all of Plaintiff's credible limitations. As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 17, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to satisfy that standard here.

The ALJ's decision includes this boilerplate language: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17.) The ALJ explained that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are "inconsistent because they are not

supported by the objective medical evidence," as "[n]either diagnostic imaging nor electrodiagnostic studies support [his alleged] loss of function." (Tr. 18.) The ALJ added that this "lack of objective evidence is further supported by findings on physical examination." (Tr. 18.)

It is well settled that an ALJ may discount a claimant's testimony based on, among other things, a lack of supporting medical evidence. *See, e.g.*, *Wills v. Saul*, 829 F. App'x 838, 839 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and noting that the "ALJ reasonably relied on . . . the lack of supporting medical evidence to find [that the claimant's] symptom allegations were not entirely credible"). Here, substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance, *Bray*, 554 F.3d at 1222) supports the ALJ's finding that the objective medical evidence undermined Plaintiff's testimony:

- December 1, 2016: Plaintiff alleged the onset of disability based on back problems and paralysis of his right hand. (Tr. 36, 54.)

- December 13, 2016: Peter Grant, M.D. ("Dr. Grant"), a consulting specialist, determined that the electrodiagnostic testing of Plaintiff's "back and lower extremity areas [showed] no evidence of lumbosacral radiculopathy, lumbosacral plexopathy, or other neurophysiologic abnormality." (Tr. 300.) Dr. Grant added that "[o]n [e]lectrodiagnostic evaluation . . . , [he] could delineate no specific neurophysiologic abnormalities to correlate with [Plaintiff's] difficulties," Plaintiff's bilateral lower extremity electromyography ("EMG") "exams were normal," bilateral "lumbosacral paraspinal EMG exams were normal," and bilateral "lower extremity nerve conduction studies were normal as well."

(Tr. 300; *see also* Tr. 377, Dr. Grant stated that no electrodiagnostic abnormalities were encountered during his December 13, 2016 exam and testing).

- August 16, 2017: Thomas Davenport, M.D. ("Dr. Davenport"), a non-examining physician, reviewed Plaintiff's records and determined that Plaintiff could perform a modified version of light exertional level. (Tr. 97-101.)

- November 21, 2017: Dr. Grant evaluated Plaintiff for a second time. (Tr. 377.) Dr. Grant stated that on electrodiagnostic evaluation, he "could delineate no specific neurophysiologic abnormalities to correlate with [Plaintiff's] difficulties," Plaintiff's bilateral upper extremity EMG exams were normal, Plaintiff's bilateral cervical paraspinal EMG exams were normal, and Plaintiff's bilateral upper extremity nerve conduction studies were normal. (Tr. 378.) As to his impressions, Dr. Grant stated that Plaintiff's "most symptomatic" diagnosis was "probably" his "[c]hronic muscular/myofascial right neck, shoulder, periscapular, and upper extremity pain syndrome with associated upper extremity referred symptoms including pain and paresthesia[]," the degenerative disease in Plaintiff's cervical spine "may have some degenerative and referred symptoms associated with [it]," and there is "[s]ome element of anxiety/adjustment disorder reaction with mixed emotional features with associated somatic preoccupation, . . . inconsistencies on examination, and functional overlay noted." (Tr. 378.) Dr. Grant recommended myofascial-

oriented physical therapy and believed that long-term management of

Plaintiff's condition would "best be accomplished through a daily home

program of stretching progressing to strengthening exercises for the neck,

shoulder, and periscapular areas." (Tr. 378.)

Nevertheless, it is also well settled that in discounting Plaintiff's symptom testimony, the

ALJ may not rely solely on a lack of supporting medical evidence. *See Valdez v. Berryhill*, 746

F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting

medical evidence in the reasons to discredit claimant testimony as long as it is not the only

reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))); *see also Taylor v.

Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (holding that the ALJ "failed to provide clear

and convincing reasons supported by substantial evidence to support her conclusion that [the

claimant's] testimony was not entirely credible," and noting that a "lack of objective medical

evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at

681)). As Plaintiff correctly pointed out in his brief, the ALJ did not cite any reasons other than a

lack of objective medical evidence to discredit Plaintiff's testimony. (*See* Pl.'s Opening Br. at 17,

"The ALJ's only discussion of the supportability and reliability of Plaintiff's testimony was an

assertion that the symptoms Plaintiff described were not entirely consistent with the medical

evidence[.]"; *see also* Tr. 17-20, the ALJ failed to explain what record evidence undermined

specific portions of Plaintiff's symptom testimony, other than a lack of supporting medical

evidence).

The Commissioner argues that the ALJ did not commit harmful error because she

provided "several independent bases" for discounting Plaintiff's testimony. (Def.'s Br. at 11.)

However, like the ALJ's decision, the Commissioner's response identifies only one specific

basis—a lack of supporting medical evidence—for discounting Plaintiff's testimony. (*See* Def.'s

Br. at 10-11, "Plaintiff states that the ALJ's only discussion of the supportability and reliability

of Plaintiff's testimony was regarding [conflicting medical evidence]. Yet, the ALJ continues for

two pages in the decision outlining the objective evidence that undermined Plaintiff's

complaints.").

      By relying solely on a lack of supporting medical evidence to discount Plaintiff's

testimony, the ALJ committed harmful error. On remand, the ALJ should reevaluate Plaintiff's

testimony in accordance with this opinion and "specifically identify the testimony [from Plaintiff

that she] finds not to be credible and explain what evidence undermines that testimony." *Lambert*

*v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

      "There are three types of medical opinions in social security cases: those from treating

physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r, Soc.*

*Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another

doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v.*

*Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's

contradicted opinions by providing 'specific and legitimate reasons that are supported by

substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528

F.3d 1194, 1198 (9th Cir. 2008)).

      "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**B.    Analysis**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinion of Plaintiff's treating physician, Dr. Holland. (Pl.'s Opening Br. at 13-16.) The Court agrees.

Dr. Holland completed a medical source statement on February 4, 2019, wherein he explained that he treated Plaintiff for CRPS, also known as RSD, in his right upper extremity based on "symptomology of pain, intermittent swelling [and] intermittent [skin] color change." (Tr. 467-71.) Dr. Holland also stated that Plaintiff suffers from associated neck pain and supraspinatus tendinosis of the right rotator cuff, spondylosis, and "moderate canal stenosis." (Tr. 471.) In terms of work-related limitations, Dr. Holland stated that Plaintiff has suffered from the following limitations since November 2016, the month before Plaintiff's amended alleged disability onset date: (1) an inability to avoid being absent from work less than three times per month, which, according to the VE, would prevent Plaintiff from sustaining gainful employment; (2) an inability to stand/walk for more than four hours during an eight-hour workday, or for more than ten interrupted minutes; (3) inability to reach for more than ninety minutes during an eight-hour workday, or for more than five uninterrupted minutes; and (4) an inability to handle for more than twenty minutes during an eight-hour workday, or for more than five uninterrupted

minutes. (Tr. 467-71; *see also* Tr. 52, "In my experience, . . . an individual may get away by missing work one day a month. If he missed more than that on a consistent basis he will be terminated.").

The ALJ was required to give specific and legitimate reasons for discounting Dr. Holland's opinion because it conflicted with the opinions of the non-examining state agency physicians, none of whom opined that Plaintiff suffered from limitations that would prevent him from sustaining gainful employment. *See Tate v. Astrue*, No. 11-cv-7971-PLA, 2012 WL 3705186, at *4 (C.D. Cal. Aug. 27, 2012) ("Dr. Styner's and Dr. Dillin's opinions on the ultimate issue of whether plaintiff was disabled during the alleged disability period conflicted with those of examining and State Agency physicians who opined that plaintiff was able to perform some work [during the period at issue]. . . . Thus, the ALJ was required to give specific and legitimate reasons for rejecting and assigning little weight to the opinions of Dr. Styner and Dr. Dillin."). The ALJ failed to do so.[2]

The ALJ provided two specific reasons for discounting Dr. Holland's opinion. First, the ALJ discounted Dr. Holland's opinion because it did not "differentiate between [Plaintiff's] right and left arm is assigning reach and manipulative limitations," which the ALJ found to be a "significant oversight" given that Plaintiff's "chronic arm pain is specific to his right, non-dominant arm." (Tr. 21.) This was not a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Holland's opinion, nor was it an accurate interpretation of Dr. Holland's opinion and treatment records. Indeed, although some of Dr. Holland's opinions were presented in the form of answers to check-box questionnaires, none of which addressed

---

[2] Given this finding, on remand the ALJ should reevaluate Dr. Holland's opinion and whether Plaintiff's CRPS constituted a severe impairment. After doing so, the ALJ should present new hypothetical questions to the VE, if necessary, and consider whether there are a "significant number" of jobs in the economy that Plaintiff can perform.

whether any reaching, handling, or fingering limitations applied only to the left or right arm,

Dr. Holland also provided a "basis for [his] assessment" after the check-box questionnaires.

(Tr. 467-70) (simplified). In this section, Dr. Holland explained that his assessment is based on

Plaintiff's CRPS in his right upper extremity and the pain, intermittent swelling, and intermittent

skin redness in his right upper extremity. (Tr. 471.) Dr. Holland's treatment records likewise

demonstrate that his opinions and treatment focused largely on limitations in Plaintiff's right

upper extremity. (*See, e.g.*, Tr. 352, April 12, 2017, Dr. Holland noted that Plaintiff's primary

impairments include "neck and right arm pain" and "progressive weakness in [his] right hand

and right arm"). Given this evidence, the ALJ erred by discounting Dr. Holland's opinion based

on any "significant oversight" or failure to differentiate between Plaintiff's arms.

  The ALJ's second reason for discounting Dr. Holland's opinion was based on

Dr. Holland's alleged failure to explain the basis for his opinion that Plaintiff would be absent

from work three times a month, particularly in light of the opinions of examining physician,

Mike Henderson, D.O. ("Dr. Henderson"), that Plaintiff engaged in excessive pain behaviors.

(*See* Tr. 21, "Dr. Holland fails to provide a basis for finding that [Plaintiff] will be absent 3 times

per month, particularly in light of Dr. Henderson's observations [regarding] . . . 'excessive pain

behaviors and inconsistencies on exam'" (citing Tr. 365)).

  As an initial matter, Dr. Holland's check-box opinion on Plaintiff's absenteeism appears

to be based on his assessment that Plaintiff suffers from "chronic" pain and swelling due to

CRPS and stenosis. (*See* Tr. 471, setting forth the basis for Dr. Holland's check-box opinions).

Thus, Dr. Holland provided an explanation for his opinion on absenteeism.

  More problematic, however, is the ALJ's reliance on Dr. Henderson's opinion to discount

Dr. Holland's opinion. The Court agrees that some of Dr. Henderson's findings appear

incompatible with Plaintiff's claim of complete disability. For example, Dr. Henderson found

that Plaintiff's exam was "theatrical and inconsistent with poor effort," Plaintiff exhibited

"multiple excessive pain behaviors and inconsistencies on exam," and Plaintiff's exam was

"completely unreliable." (Tr. 365.) The Social Security Administration, however, "has specific

guidelines for the evaluation of CRPS for purposes of disability determination," *Saffaie v.*

*Berryhill*, 721 F. App'x 709, 710 (9th Cir. 2018) (citing SSR 03-02p)), which recognize that "[i]t

is characteristic of [CRPS] that the degree of pain reported is out of proportion to the severity of

the injury sustained by the individual." *Pettingill v. Saul*, No. 18-2979, 2020 WL 2404616, at *5

(E.D. Cal. May 12, 2020) (simplified). Here, the ALJ did not evaluate the medical opinions in

accordance with SSR 03-02p. Pursuant to those guidelines, Dr. Henderson's findings as to

Plaintiff's pain behaviors are not necessarily inconsistent with Dr. Holland's opinion about the

effects of Plaintiff's CRPS.[3] Accordingly, the ALJ erred in discounting Dr. Holland's opinion

based on Dr. Henderson's findings.

Based on the foregoing reasons, the Court concludes that the ALJ failed to provide

specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Holland's

opinion.

///

///

///

---

[3] Also problematic is Dr. Henderson's finding that Plaintiff's imaging showed signs of "spondylosis but no [signs of] stenosis." (Tr. 365.) Dr. Henderson reviewed Plaintiff's records from Southern Oregon Spine Care and Siskiyou Community Health Center (Tr. 364), and those records reflect that Plaintiff's imaging revealed "fairly severe . . . foraminal stenosis" at C5-C6, "severe right-sided foraminal narrowing" at C6-C7, and moderate central stenosis at C6-C7. (*See, e.g.*, Tr. 337, March 2, 2017 note from South Oregon Spine Care describing the results of the MRI of Plaintiff's cervical spine and the findings that his treating spine specialists found to be "pertinent"). Thus, the records Dr. Henderson reviewed do not support his findings.

### III.    REMEDY

#### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

#### B.    Analysis

Even if Plaintiff could satisfy the credit-as-true standard here, the record creates serious doubt about whether Plaintiff is disabled. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) ("[W]e need not determine whether the three preliminary [credit-as-true] requirements are met because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled.").

The record includes several reports that create sufficient doubt about whether Plaintiff is disabled. For example, during the February 15, 2019 hearing before the ALJ, Plaintiff testified that he stopped working because he "lost the ability of using [his] right arm," which impacts his ability to handle. (Tr. 37.) Plaintiff also testified that he cannot tie his shoes due to his inability to use his right arm, he has walked with a cane since 2005 or 2006, and he can "maybe [walk] 20 feet" without his cane. (Tr. 38, 42-43.) In a function reported dated February 13, 2017, Plaintiff testified he cannot stand or walk for "prolonged periods of time," he needs help getting dressed, his daily activities consist of drinking coffee and "find[ing] a comfortable position," he does not perform house or yardwork due to a "lack of mobility," he goes outside "once for about 15 to 30 [minutes] or the pain becomes to[o] much," and his hobbies "used to [include] . . . go[ing] hunting." (Tr. 225-29.) When asked how often he hunts, Plaintiff stated "[n]ot at all" since 2006. (Tr. 229.)

Notably, however, when Plaintiff developed a rash and needed to see a dermatologist on October 19, 2018, Plaintiff reported that he "hunts daily" and did "not want to put anything scented on his skin because he hunts every day." (Tr. 436.) In the Court's view, it would be inappropriate to remand this case for benefits given the inconsistent testimony described above, which appears to detract from the reliability of Plaintiff's self-reports regarding his functional limitations. The Court therefore remands this case for further proceedings consistent with this opinion.

///

///

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 31st day of March, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge